Next case this morning is 24-8077, Liberty Mutual Insurance Company v. Cincinnati Insurance Company. Counsel for Pelham, if you'd make your appearance and proceed, please. Good morning. May it please the court, Vincent Vallarta for Cincinnati Specialty Underwriters, improperly pled as Cincinnati Insurance Company. As the court, I'm sure, is aware, the underlying cases that this case arose from were two personal injury complaints arising from a trucking accident. The underlying complaints there set forth allegations that General Contractor Simon's contractors improperly graded a road and independent claims against Cincinnati's insured S&J for claims against S&J, sorry, for improper guards and warning hazards. The complaints do not claim that S&J was at the site or responsible for improper grading either during or after Simon completed its work, nor do the complaints allege that Simon informed S&J that there was a section of the road that needed additional signage. Because the allegations against Simon do not arise or have any connection to S&J's work, Simon was not initially insured on the policy and no defense obligations were owed to Simon. The only agreement between Simon and S&J was drafted by Simon, therefore has to be construed against Simon. The agreement in Paragraph 6 states that subcontractor agrees to defend, indemnify, protect, safe, harmless the contractor and owner from all liability, losses, damages, etc., including with attorney's fees and costs arising from bodily injury to persons whether employed by the contractor or others, including without limitation the loss of use occurring or arising out of or in connection with S&J's work. Whether or not occurring or arising out of or claim to have occurred or arisen out of concurrent acts, negligence, and omissions of the contract. The insurance policy at issue, Cincinnati's policy, contain additional insured endorsement. That endorsement provides who is an insured is amended to include as an additional insured any person or organization we have agreed in writing by contract or agreement. And the language speaks in that additional insured provision about cause in whole or in part by your acts or omissions in performance of your ongoing operations for the additional insured. Well, then you look at what the undertaking was by S&J and that undertaking seemed to relate precisely to what is alleged to be the failing here. The protection of guardrails to protect against harm. That's exactly what the suit is about, is it not? Actually, the suit is also about direct allegations against Simon for improper grading. And let's take the position that that's true for the moment. Assuming that's true, that's not all that the suit is about. And so if the suit were about some allegations against Simon only and some allegations against S&J that triggered that provision in the additional insured, that would be enough, would it not? Respectfully, I don't believe so, Your Honor. And why not? Because the underlying complaint brought by Mr. Gibson and Mr. Ware, Mr. Gibson alleges that while acting as general contractor for the project, defendant Simon was required to provide safety and convenience and included additional allegations about improper grading. Slope on the side of the road. Allegations say that the truck went around the slope, truck rolled off. S&J had nothing to do with the actual grading, which was the responsibility of Simon, the general contractor. Yes, but S&J was supposed to be providing protections to alert to the grading, right? That's correct. Well, the reason that the truck went off the road is there weren't notices that there was going to be a problem at the grading, right? And that's the other issue, Your Honor, respectfully, is S&J was not even on the site nor called by Simon, nor in control of the site. Now, most of the cases… That's a defense to liability for S&J, isn't it? Correct. As opposed to, I mean, the allegations and the complaint suggested that they both failed to warn, not just Simon, not just S&J, but that they both did it. And so just because, I mean, S&J wasn't notified, I mean, how does that get them out of the indemnity and out of the, you know, providing a defense? So that's a different issue with indemnity, and I'll step back a little bit. When this tender came in to Cincinnati, I think it was back in 2022, tender was denied. Nothing was heard for years after that. The underlying suit settled, Liberty and Cincinnati each indemnified on their own. There was no further pursuit of any defense fees until after the cases settled. So indemnity is not even the issue here. And as you see in all these cases we talk about, additional insured coverage here, indemnity there. This case is strictly, it's kind of backwards in my mind. I mean, handling these cases throughout the years, usually it's a case for additional insured coverage. Whereas here, it's simply reimbursement of defense fees. And pursuant to the agreement, it's clear that it's only arising out of, any liability has to be imputed from any allegation against Simon that S&J did it wrong. And that's just not the case in these complaints. There's no allegations against Simon that S&J misperformed. Well, obviously the court found first mercury insurance to be an important case. And in that case, as the district court notes, the contract was, the underlying complaint only sued the contractor. No, there were facts to suggest a causal relationship between the subcontractor's action and the injuries such that the duty to defend was triggered. So even though the suit was only against the contractor, which is even more on your side of the ledger than our present case, the court still found a duty to defend. And in fact, Cincinnati was on the other side of that case with this same policy language, right? Well, I believe that case is distinguishable. First, I believe the plaintiff in that case was the employee of the sub, so they couldn't sue the sub directly, as I recall. So they sued the GC. GC brings in a sub usually on these cases on a third-party claim for indemnity. In that case, there was no issue about defense because they did. They took over defense right away. Second, that case, I believe, dealt with a fall. I think it was roofing work and a fall through a hole where I think the sub even asked, was asked to direct an employee to inspect this hole, and that employee fell through. Clearly distinguishable because S&J, again, was not even on the site where Simon was performing the work. And the work of Simon did not include S&J's work. The work of Simon included, and it was alleged, improper grading. But it was more than that. There's the signage, there's the barriers, there's... S&J isn't a stranger out there. They have contracted life responsibilities that direct, that bear directly on what happened here. Had there been barriers, had there been better signage and so forth, the truck might not have crossed the one-inch barrier or come back and rolled. And so, certainly, S&J is involved in this. And if it's involved for some, there's a duty to defend for all, is there not? So that's where I think is the difference, because the contract, like I just read, says it has to be arising out of the work of S&J. Here there were independent allegations, and that's the crux of our argument throughout the briefing. I think we've... Well, it could be the work of S&J or the omission, right? An act or omission. An act or omission. Right. But again, here, there's just the work of Simon. They were on the site. They're the ones that graded. S&J did not grade any part of it. And there's allegations in the complaint for improper grading caused the accident. But what do you do about... I mean, there's also allegations in the complaint about failures to warn. Sure. Right? And that's pushed off on both parties, both Simon and S&J, right? You don't contest that, do you? No, not at all. And they said Simon should have done it and didn't do it. S&J should have done it and didn't do it. I mean, so isn't that an allegation against S&J as to its own omission? And I think that's where the complaints do separate because there's nowhere that it says Simon's negligent because S&J didn't perform the work. They didn't name S&J in relation to what Simon's work was. So the position that Cincinnati took was reasonable. I don't understand that point. What are you saying? What was your response to Judge Carson? There were independent allegations of negligence against each party. Usually in these cases, there's allegations. You know, for instance, in the first Mercury case, the sub was controlling the site, working on the site. That was not the case here. There's independent allegations against Simon for their negligence and improper grading, independent allegations against S&J for failure to warn. Well, I'm looking at the Gibson complaint. The Gibson complaint speaks to both defendants throughout. Where do you get this independent allegation stuff? I mean, if, for example, we're looking at paragraph 16, both defendants failed to warn drivers of any potential danger where the edge drop-offs along the projected exceeded one inch in violation of the controlling DOT specifications. Both defendants. So how does that become Simon's problem alone? Well, the Gibson complaint also says that Mr. Gibson alleged that Simon breached his duty by failing to provide adequate warnings for edge drop-offs, failing to erect sufficient barriers to protect drivers. Then it says Mr. Gibson alleges that defendant S&J is responsible for its own acts and omissions. And they've said that throughout the complaint. So, again, these cases do talk about independent allegations against, which is what the contract says, your actor. Let me ask two questions. One, let's assume, and this is an assumption now, that only a portion of these two underlying complaints, only a portion of it involved joint activity of S&J and Simon. In other words, trying to hold both parties liable for their conduct. And all of the rest of it had independent allegations against each of them. Would you be relieved of a duty to defend? Well, again, pursuant to the agreement which Simon drafted. I think that was a pretty straightforward question. What's the answer to the question? I think where there's independent allegations, yeah, they would be relieved of the duty to defend. If there were a mixture of independent and non-independent allegations in the complaint, would you be relieved of a duty to defend? In that narrow interpretation, yes. Here, I don't think that's the case. In that narrow interpretation, yes, you would be relieved of a duty to defend? Narrow example, sorry. Sure, if there's – and again, that gets down to what – What does sure tell me? What is the answer to the question? Would you be relieved of a duty to defend if there was a mixture in the allegation, in the complaint, of independent actions by each one, allegations of liability as it relates to each one, and some that involved joint activity? Would you be relieved overall of a duty to defend? For the additional assured, I believe so. Okay. The second question is what I – help me to understand what your conception is of the relationship of the additional assured language and the actual subcontract. And I guess the best way I can do it is tell you at least what I posit and you tell me where I'm wrong. It seems to me that initially we start this inquiry by looking at the additional assured language. And what does the additional assured language say? And it speaks of operations in question. Okay. With that point in question, you then look at the subcontract and you say, actually, what are the obligations that were involved in S&J's responsibilities vis-à-vis Simon? I mean, that's how I'm looking at it. In other words, the beginning and essentially the dispositive language in some ways is the language in the policy, right? Correct. Okay. I think I have two minutes I'll reserve. Thank you. Please. May it please the Court. Dan Rohner on behalf of the Apelli Liberty Mutual Insurance Company. I want to start where some of your questions left off and just point out a factual issue with respect to the contract, the subcontract that's at issue, because some language got left out. The language in the subcontract with respect to indemnification says, occurring or arising out of or in connection with the subcontractor's work, whether or not occurring or arising out of or claimed to have occurred or arisen out of the concurrent acts, negligence, or omissions of the prime contract. That language was left out. It is important. Now, ultimately, I guess you think the important part of that language has to do with the concurrent acts. I think there are two parts that are important, Your Honor. First, I think the argument was focusing on the arising out of, and it's occurring or arising out of or in connection with. So I think that's important. Second, it expressly identifies the fact that there may be allegations of concurrent acts of negligence by the prime contractor does not impact their indemnification obligations. But now getting to more of the focus, which I think Chief Judge Holmes, you were focusing on. And how do those, as an analytical matter, how do those indemnification provisions relate to what's at issue here? And the reason I ask that is, again, going back, and I'm just trying to see how these two pieces fit together in the analysis. What it seemed to me what one would do is you would look at the language. It says ongoing operations, for example, in whole or part that is in the additional insured language. You say, okay, fine. What are the operations that this subcontractor committed to do? In other words, that wouldn't really relate to what they agreed for indemnification purposes, would it? It would just relate, what is the essence of what you said you would do? Well, to answer your question, I agree that you start with the additional insured provision. And you interpret that provision pursuant to the standards that have been set out under Wyoming law. In this case, the express language is that the additional insured applies if there are allegations of bodily injury, which there are here, caused in whole or in part by the acts or omissions of S&J. And the cases that have addressed this type of language in the Tenth Circuit and in any insurance policy within Wyoming tell courts, well, where do you need to look to see whether this applies? We look at the complaint. In this case, the complaint, as you all noted, has multiple, well, there are two complaints. They're very similar, but have multiple allegations where either they expressly identify the fact that the bodily injury was caused, at least in part, by S&J, or they expressly state that both defendants were responsible for the bodily injury. In any case, and this is what the district court focused on and found, there really is not much debate looking at that complaint as to whether it falls within the language of the additional insured provision. It's really not debatable at all. And so what I hear Cincinnati arguing is that there's somehow some limitation set forth in the subcontract that limits the application of this additional insured provision. And as I discussed at the very beginning, there isn't. There is no limitation that would apply under the facts here. And could there be? Certainly there could be. What the additional insured provision says is we're not going to insure an additional insured any more than what the contract provides. Now, there might be other issues with that subcontract in terms of the agreements between the two parties as to what their obligations were in terms of providing additional insured protection. So that could be debatable as to whether the subcontract complied with its obligations. If it provided an additional insured coverage that actually didn't do what it was supposed to do under the subcontract. And that's not an issue here. But absolutely, that is what, through this additional, through this contract, you could have, they could have had some kind of limitation in the subcontract where the insurer could have said, well, yes, under our language it might apply, but because of the way the subcontract's written, we don't have to provide that. But would it be? Well, just to understand, if that is the argument, I mean, if there's some language in the subcontract, would that language, though, relate to and be present in the provision that relates to the additional insured? In other words, the S&J agrees to make you an additional insured, but here are all these exceptions that aren't going to be covered by this additional insured provision. In other words, and so wouldn't it relate then to the scope of insurance as opposed to some question of indemnity? Because indemnity talks about this is our relationship between each other. And I know there's a cap. I know that there would be a cap on additional insured up to the amount that essentially you would be insured, right? Isn't that what the language essentially says? Yes, yes. Okay. Well, okay, I get that. But so just help me to try to understand then what would be the nature of any sort of exclusion that could be present? I think you're right, Judge. I'm not sure that I've – I don't think it applies. I don't think it's applicable in this case. I think that the focus of the district court decision, the focus of our arguments, has been what does the policy say? Do the allegations of the complaint fit within the policy? As is generally the way these things play out.  Which is why this focus on the subcontract is sort of puzzling to me. I mean generally you look at the complaint, you look at the policy, and you decide whether there's a duty to defend, right? And if you've looked at our briefing, that's exactly what we think is the appropriate process, and that's what the district court did in this case. The other piece that may be missing a little bit is – I mean frankly I don't understand entirely Cincinnati's position with respect to this independent duty argument. First, I don't see it in the complaint itself. I don't see some distinction where there are – that somehow there's no allegation that the prime contractor, that Simon might be liable for something that the subcontractor did or didn't do. How about the grading? Simon, that's exclusively you. Absolutely, absolutely. The fact that allegations were made that might be independent in terms of potential claims and liability risk is not – The provision here that requires Cincinnati to insure Simon as an additional insured, all you're looking at is, is there bodily injury that's alleged to have been caused, at least in part, by S&J? So the fact that there might be even an independent allegation against Simon that, hey, Simon, you also did this, has nothing to do with S&J, you also did this that caused injury. That has no impact whatsoever on whether Simon is an additional insured or not. Because all that needs to be – the only standard that needs to be met is that there's bodily injury that's alleged to be caused in whole or in part by S&J. And this goes back to the question I asked earlier. If in these underlying complaints you had a mixture of allegations, some that appear to – let's say, just assuming – appear to only implicate activity of Simon. Simon did this. There would have been no scope of operations by S&J that would have been implicated by those allegations. But then, in connection with the same bodily injury, you had in that complaint allegations that were directed at S&J that implicated Simon. In that circumstance, as a matter of law, is there a duty to defend? Absolutely. Otherwise, what does in whole or in part mean? That's the purpose of that language, in whole or in part. In part could mean that it was done jointly. I think you're right. I still don't think it changes the result. Theoretically, you could have a situation where there are independent actions by the two defendants versus an action that was done by both. How important is First Mercury to our disposition? I don't think it's required. I think that it's essentially a case with very similar language and actually better facts in terms of the applicability in our case. Because, as at least someone noted, in First Mercury, there wasn't even an allegation against the subcontractor. It came out in trial that there were some defenses that were asserted that pointed to the acts and omissions of the subcontractor. And it was based on that that the additional insured provision kicked in. I think, at base, this is a simple contract interpretation question. And the additional insured provision is clear and unambiguous, as the district court found. The allegations of the complaint are clearly alleged that S&J, at least in part, caused the injuries at issue. And whether you have First Mercury or not, the district court judge and this court can look at that contract, look at the complaint, and reach the conclusion that the allegations of the complaint are sufficient to invoke additional insured protection for assignment. So, on the First Mercury decision, does it seem to be distinguished by your opposing counsel on the idea that it was an indemnity case as opposed to a duty to defend case? Well, I didn't fully understand. I mean, there is, in First Mercury, they deal with the duty to defend. And the language that is addressed deals with the duty to defend. There was some reference to the timing of this particular case. The timing of this case was the defense was tendered, the case was filed. The death action that was initiated by Liberty Mutual was during the pendency of the case. It wasn't after the case was done. During the pendency of the case, we brought this action. And at some point after this case was filed, a settlement was reached in the underlying litigation on indemnity. No impact, in my view, that has no impact whatsoever on whether Cincinnati had a duty to defend and still has a duty to defend. Now, clearly, to the extent there was a duty to indemnify, which potentially there might have been, the case was settled, and Liberty Mutual was part of the settlement. And so there is no decision upon which any decision on liability, the kinds of issues that might get more complicated as to who did what and who had what duties on the liability side, that's done. That part has been settled. But the duty to defend is based on the complaint itself and only the complaint. Any more questions? Not seeing any. All right, I'm done. Thank you. Thank you. Thank you. Just want to point out, I believe we cited several cases in our briefing. The Mid-Continent case held in the Southern District of Florida, I know it's not in this court, could be persuasive. However, the plaintiff's insurer there did not have an obligation to defend the additional insured, even though the operative complaint also asserted a claim against the named insured. Because the count asserting negligence claims against the named insured was separate and independent from the count asserting negligence claims against the additional insured. Isn't the problem here that if S&J had performed their duty to warn that it would have alleviated the injury? So, I mean, you could look at this and say, yeah, Simon is, you know, S&J did cause it and S&J and Simon is being damaged by it. Well, here there was no finding of liability. It was settled. No, I understand that, but I mean, that's the natural inference of the allegation. I mean, they didn't care who didn't put the signs up. They said it's everybody's job to put the signs up. And so if your client would have put the signs up. Well, the signs were there. In their opinion, there wouldn't have been an injury. Actually, my client is the insurance company. You're insured. How's that? Yeah. And again, the cases that cite independent allegations of negligence. That's what we said throughout the briefing. And here there are independent allegations of negligence against Simon, which are not required to be defended by Cincinnati. What about these Florida cases? The district court wouldn't oblige to follow those Florida cases, was it? Of course not, but they could be considered. And why do you think that Wyoming, if we were applying Wyoming law, why do you think Wyoming would apply this Florida case? The court can do as they wish, but also the first Mercury case was in New Mexico. Well, I mean, we're supposed to be predicting what Wyoming would do, right? Yeah, and the first Mercury case was in New Mexico. Did you provide any argument or authority that the Florida cases, that the law applied in those cases, interpreted insurance law in the same manner as Wyoming? I believe it was fairly consistent throughout Florida, New Mexico, Wyoming, Utah. Do you remember if you made that argument? I believe it was made in the beginning of the briefing. That's precisely the point I was trying to get at. I mean, if they're going to be relevant, they're going to have to be some basis to believe that Wyoming law would apply them, right? And I think insurance policy interpretation is fairly consistent with the cases we cited. Thank you. Thank you, counsel. Thank you both for your arguments. Case is submitted.